**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| KAREN V. MARTIN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | 1:09CV20 |

**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Karen V. Martin, brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of Defendant's final decision denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under, respectively, Titles II and XVI of the Act. The Court has before it the certified administrative record and the parties have filed cross-motions for judgment.

**PROCEDURAL HISTORY**

Plaintiff applied for DIB and SSI on July 18, 2005, alleging a disability onset date of July 28, 2004. (Tr. 70, 73.)[1] Her application was denied initially and upon reconsideration. (Tr. 40-42, 45-49.) Thereafter, Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. 7.) Plaintiff, her attorney, and a vocational expert ("VE") appeared at the hearing on May 12, 2008. (Tr. 11.) The ALJ concluded that

---

[1] Transcript citations refer to the administrative record.

Plaintiff was not disabled under the Act (Tr. 20) and, on December 22, 2008, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion Defendant's final decision for purposes of judicial review. (Tr. 2-4.)

In rendering his disability determination, the ALJ made the following findings later adopted by Defendant:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.
>
> 2. The claimant has not engaged in substantial gainful activity since July 28, 2004, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: a congenital left side deformity, fibromyalgia, and depression (20 CFR 404.1520(c) and 416.920(c)).
>
> . . . .
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> . . . .
>
> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) <u>which does not require climbing, balancing, stooping, kneeling, crouching, or crawling</u>, and which requires occasional overhead reaching, handling, and fingering on the non-dominant left side.

(Tr. 13-15 (emphasis added).)

In light of the above findings regarding residual functional capacity ("RFC"), the ALJ determined that Plaintiff could not perform her past relevant work as a certified nurse assistant.

-2-

(Tr. 18.) He found that transferability of job skills was not an issue in the case, but added that Plaintiff has at least a ninth grade education and can communicate in English. (Id.) Finally, because Plaintiff was 42 years old on her alleged onset date, the ALJ noted that she was regulatorily defined as "a younger individual age 18-49." (See id.)(citing 20 C.F.R. §§ 404.1563 and 416.963). Based on these factors, Plaintiff's RFC, and the VE's testimony, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Id. (citing 20 C.F.R. §§ 404.1560(c), 404.1566, 416.960(c) and 416.966).) Accordingly, the ALJ decided that Plaintiff was not under a "disability," as defined in the Act, from her alleged onset date through the date of the decision. (Tr. 19.)

## DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [judicial] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In confronting the issue so framed, the Court must note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the

---

[2] "The Social Security Act comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

adjudicative process, the Social Security Administration has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This process has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry the "evidentiary burden of proving that [the claimant] remains able to work other

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

### Assignment of Error

Plaintiff argues that the ALJ "erred at step five of [the] sequential evaluation by finding Plaintiff capable of work that exceeds her [RFC]." (Docket Entry 11 at 2.) This contention stems from a discrepancy between the RFC as set out in the ALJ's decision and the RFC propounded to the VE in a hypothetical question. (See id. at 5-6.) In his decision, the ALJ found that Plaintiff could "perform light work . . . <u>which does not require climbing, balancing, stooping, kneeling, crouching, or crawling</u>, and which requires occasional overhead reaching, handling, and fingering on the non-dominant left side." (Tr. 15 (emphasis added).) At the hearing, however, the hypothetical question posed to the VE specified an individual "limited to <u>frequent</u> climbing, balancing, stooping, kneeling, crouching, [and] crawling" in addition to the "occasional" reaching and handling restrictions listed above. (Tr. 286 (emphasis added).) The VE responded that an individual with such an RFC could perform the jobs of bakery worker or fruit distributor, both light exertional level positions, and could do

---

[5] A claimant thus can qualify as disabled via two paths through the five-step sequential evaluation process. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the sequential nature of the five-step disability evaluation appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

the sedentary jobs of surveillance system monitor and selection clerk.  (Tr. 286-87).  As to each of these jobs, the VE referred specifically to a corresponding code in the <u>Dictionary of Occupational Titles</u> ("<u>DOT</u>").  (<u>See</u> <u>id.</u>)  The ALJ relied on this testimony to find Plaintiff not disabled at step five of the sequential evaluation.  (<u>See</u> Tr. 19.)

At step five, the Commissioner must prove in one of two ways that a claimant remains able to perform other jobs available in the community.  Where the claimant has purely exertional impairments, the ALJ may apply the Social Security Administration's medical-vocational guidelines (the "grids"), contained in 20 C.F.R. Chapter III, Part 404, Subpart P, Appendix 2, to establish the claimant's vocational ability.  <u>See</u> <u>McLain v. Schweiker</u>, 715 F.2d 866, 870 n.1 (4th Cir. 1983).  If, however, the claimant suffers from non-exertional impairments, such that the grids do not encompass her particular limitations, the ALJ must consider vocational expert testimony.  <u>Id.</u>  Because Plaintiff's impairments fall in the latter category, expert testimony was required in this case.

The ALJ may rely only on VE testimony derived from hypothetical questions that accurately reflect a claimant's impairments.  <u>Walker v. Bowen</u>, 889 F.2d 47, 50 (4th Cir. 1989). In posing the above-quoted question to the VE, the ALJ misspoke in a manner that mischaracterized the limitation on Plaintiff's ability to perform the full range of light work that the ALJ adopted as part of Plaintiff's RFC.  (<u>Compare</u> Tr. 15, <u>with</u> Tr. 286.)  This circumstance generally would undermine the value of the

VE's corresponding testimony about available jobs Plaintiff could perform because that testimony would not account for Plaintiff's restriction to a job "which does not require climbing, balancing, stooping, kneeling, crouching, or crawling" (Tr. 15). In this case, however, the DOT listings for the jobs identified by the VE expressly state that, as to each, the activities of "Climbing," "Balancing," Stooping," Kneeling," "Crouching," and "Crawling" are "Not Present – Activity or condition does not exist." DOT (4th ed. 1991) (bakery worker, 524.687-022, available at 1991 WL 674401; fruit distributor, 921.685-046, available at 1991 WL 688088; surveillance-system monitor, 379.367-010, available at 1991 WL 673244; election clerk, 205.367-030, available at 1991 WL 671719).

The ALJ's misstatement thus represents a harmless error, as a number of judges in the Fourth Circuit have concluded in analogous contexts. See, e.g., Randolph v. Astrue, No. 1:08CV839, 2011 WL 3841960, at *4 (M.D.N.C. Aug. 26, 2011) (unpublished) (Dixon, M.J.) ("[A]t least two of the jobs identified by the VE . . . require no stooping or crouching. . . . Thus any error by the ALJ for failing to . . . include these limitations [in the recitation of the plaintiff's RFC] would be harmless." (citing to job descriptions in DOT providing that "[s]tooping and crouching are both . . . activities that do not exist in these jobs")), recommendation adopted, slip op. (M.D.N.C. Oct. 7, 2011) (Eagles, J.); Overcash v. Astrue, No. 5:07 CV 123-RLV-DCK, 2010 WL 5904394, at *5 (W.D.N.C. May 21, 2010) (unpublished) ("Plaintiff also argues the ALJ found that she must 'avoid exposure to workplace hazards,' but failed to

include this limitation in the hypothetical question posed to the VE. . . . [T]his omission in no way affects the hypothetical's legal adequacy. The omission of Plaintiff's assessed need to 'avoid exposure to workplace hazards' did not adversely affect the VE's testimony's purported purpose as none of the jobs cited require any exposure to workplace hazards. As such, the VE's testimony correctly cites work available in the national economy the Plaintiff could perform . . . . [T]he Fourth Circuit will not remand a matter due to harmless error. . . . If the ALJ's hypothetical included the need to 'avoid exposure to workplace hazards,' the VE's testimony would remain unchanged as this limitation does not preclude any of the jobs the VE cited." (citing Camp v. Massanari, 22 Fed. Appx. 311 (4th Cir. 2001))), recommendation adopted, 2011 WL 815789 (W.D.N.C. Feb. 28, 2011) (unpublished); Ward v. Astrue, No. 2:09CV53, 2010 WL 1752554, at *4 (W.D. Va. May 3, 2010) (unpublished) ("Ward argues that the ALJ erred because the hypothetical question presented to the VE did not contain all the limitations found by the ALJ. The Commissioner concedes that the ALJ did not include the limitation, which she ultimately found in her decision, that Ward should not work in a position requiring more than occasional interaction/cooperation with co-workers and the general public. . . . However, the Commissioner argues that this does not affect the decision because two of the occupations noted by the VE . . . did not require more than occasional interaction or cooperation with others. The erroneous hypothetical did not change the outcome of the decision

as the VE identified two occupations that fit within the parameters of the limitation that was omitted.  Thus, the ALJ's mistake was a harmless error." (citing DOT provisions for cited jobs and Camp)); Farnsworth v. Astrue, 604 F. Supp. 2d 828, 858-59 (N.D.W. Va. 2009) ("[T]he hypothetical [posed to the VE] does not directly track the RFC finding.  In posing the hypothetical, the ALJ failed to mention the Claimant's need to avoid exposure to machinery. . . .  [T]he ALJ's failure to mention any exposure to machinery in the hypothetical was error, but constitutes harmless error, because there is no evidence [its] inclusion . . . would have resulted in a different finding by the ALJ regarding the availability of jobs in the national economy.  The Court so finds because there is no indication in the job descriptions for [the jobs identified by the VE] that Claimant would be exposed to machinery of any kind in these positions." (internal citations omitted))).

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's motion to reverse the decision of the Commissioner (Docket Entry 10) be **DENIED,** that Defendant's motion for judgment on the pleadings (Docket Entry 12) be **GRANTED,** and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
_____
**L. Patrick Auld**
**United States Magistrate Judge**

May 18, 2012